UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
TOWAKI KOMATSU,                                               :
                                        Plaintiff,            :
                                                              :
            -against-                                         :
                                                              :
NTT DATA, INC., et al.,                                       :
                                        Defendants.           :
                                                              :
-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/17/2016

15 Civ. 7007 (LGS)

**OPINION & ORDER**

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Towaki Komatsu brings this action against Defendants NTT Data, Inc. ("NTT Data") and Credit Suisse AG ("Credit Suisse"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 et seq., and New York Labor Law § 215. Plaintiff moves for leave to amend the First Amended Complaint ("FAC"). Having reviewed the parties' memoranda of law and other submissions in connection with the motion, Plaintiff's motion to amend is denied. Furthermore, because Plaintiff's claims must be arbitrated rather than litigated in this forum, the FAC is dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I.    BACKGROUND**

   **A.    The Agreement**

On January 13, 2012, Plaintiff executed a consultancy agreement (the "Agreement") between Ikam Adeu Corporation ("Ikam") and M.I.S.I. Co., Ltd. ("M.I.S.I."), in his capacity as president of Ikam. Plaintiff owns and operates Ikam. According to the affidavit of Francis J. Convery, an executive at NTT Data who also had served as an executive of M.I.S.I., M.I.S.I. merged with and into NTT Data on or about March 31, 2012.

The Agreement provides that Ikam as a consultant of M.I.S.I. would provide services to

certain of M.I.S.I.'s clients as provided in Exhibit A. Exhibit A states that Ikam's employee, Plaintiff, would provide "production support" services to M.I.S.I.'s client, Credit Suisse, from on or around January 18, 2012, to January 18, 2013. Pursuant to the Agreement, Plaintiff was the only employee of Ikam to be assigned to provide services to Credit Suisse. Credit Suisse is not a party to the Agreement.

The Agreement explicitly states that, under its terms, Ikam is an independent contractor rather than an employee of M.I.S.I. The Agreement establishes five conditions under which it may be terminated: (1) by M.I.S.I., for any reason or for no reason, upon two weeks prior notice to Ikam -- although the Agreement explicitly provides that the services provided to M.I.S.I.'s client may terminate upon shorter notice or without notice if the client so requires; (2) by Ikam, for any reason or for no reason, upon two weeks prior notice to M.I.S.I.; (3) by the filing of a petition in bankruptcy by or against Ikam as debtor; (4) by any breach by Ikam of any of the Agreement's representations or warranties; or (5) by any failure of Ikam to fully and faithfully perform any of its obligations under the Agreement. According to the Convery affidavit, NTT Data exercised its right to terminate the agreement in April 2012.

The Agreement requires that any "controversy, dispute and/or claim" between Ikam and M.I.S.I. -- or any of their respective officers, directors, shareholders or employees -- "which may ever arise between them in relation to this Agreement" be settled solely by binding arbitration to be held in New York City.

> B.   **The State Court Action**

Plaintiff previously pursued relief against NTT Data in New York state court, according to the affirmation of M. Todd Parker. On November 21, 2012, Plaintiff filed a complaint for failure to pay wages and for breach of contract against NTT Data relating to NTT Data's

termination of the Agreement and alleged failure to pay Plaintiff.  In its order dated April 11, 2014, the Civil Court of the City of New York[1] granted NTT Data's motion to stay the proceeding and compel arbitration pursuant to the arbitration clause of the Agreement.

### C. The Federal Court Action

Plaintiff filed this action on September 4, 2015, and named both NTT Data and Credit Suisse as Defendants.  The FAC, the operative complaint, alleges that both Defendants violated the FLSA and New York Labor Law by failing to pay Plaintiff overtime wages and by retaliating against him.  The FAC further alleges claims against NTT Data of breach of the Agreement, negligence and fraudulent misrepresentation.  These claims are substantially identical to the claims raised in Plaintiff's state court action in that they allege that NTT Data failed to pay Plaintiff overtime wages and misclassified him as an independent contractor rather than an employee.  The FAC also alleges claims against Credit Suisse of fraudulent misrepresentation, negligence and unjust enrichment.  Credit Suisse was not a Defendant in the state court action.

On September 18, 2015, Plaintiff sought a preliminary injunction and temporary restraining order against NTT Data, in substance seeking payment of monies allegedly owed to Plaintiff.  At the hearing on the order to show cause for a preliminary injunction and temporary restraining order on September 28, 2015, the Court dismissed Plaintiff's claims against NTT Data for lack of subject matter jurisdiction, as Plaintiff's claims alleged an injury from a prior state court ruling -- the New York state court's order compelling arbitration -- and effectively asked the Court to reverse the decision of the New York state court to compel arbitration.

Plaintiff filed his motion for leave to amend the FAC on October 19, 2015, and both Plaintiff and Defendants extensively briefed the issue of whether Plaintiff's proposed Second

---

[1]  The Civil Court of the City of New York is part of the New York State Unified Court System and accordingly is referred to in this opinion as the "state court."  *See* http://www.nycourts.gov/.

Amended Complaint ("SAC") would be futile.

Plaintiff's proposed SAC alleges the following causes of action:

1. Against Credit Suisse for violation of the FLSA for failure to pay regular wages and overtime wages;

2. Against Credit Suisse for violation of the New York Labor Law for failure to pay wages;

3. Against both Defendants for violation of the New York Labor Law for retaliation;

4. Against Credit Suisse for fraudulent misrepresentation;

5. Against Credit Suisse for negligence;

6. Against Credit Suisse for unjust enrichment;

7. Against NTT Data for retaliation in violation of the Sarbanes-Oxley Act (the "SOX Claim");

8. Against NTT Data for fraudulent misrepresentation.

In sum, as to NTT Data, Plaintiff has dropped some claims and reasserted some claims that were dismissed in the FAC, and seeks to add the new SOX Claim. Plaintiff seeks to reassert all of its claims against Credit Suisse, including his FLSA and New York Labor Law claims.

Plaintiff filed a complaint on October 29, 2015, with the Occupational Safety and Health Administration ("OSHA") against both Defendants regarding his termination. OSHA dismissed the complaint as untimely on February 11, 2016.

## II. STANDARD

A motion for leave to amend a complaint is entrusted to the discretion of the district court. *In re Arab Bank, PLC Alien Tort Statute Litigation*, 808 F.3d 144, 159 (2d Cir. 2015) ("As for leave to amend the complaints, 'we review [the district court's refusal to allow such amendment] only for abuse of discretion which ordinarily we will not identify absent an error of law, a clearly erroneous assessment of the facts, or a decision outside the available range of

4

permitted choices.'" (quoting *Knife Rights, Inc. v. Vance,* 802 F.3d 377, 389 (2d Cir.2015))).

"While '[l]eave to amend should be freely granted, . . . the district court has the discretion to deny leave if there [was] a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Id.* (quoting *Jin v. Metro Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)).  Futility is assessed under the same standard as a motion to dismiss: "determining whether the proposed complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Indiana Pub. Retirement Sys. v. SAIC, Inc.*, No. 14-4140-cv, 2016 WL 1211858, at *5 (2d Cir. March 29, 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

District Courts have the inherent authority to dismiss meritless claims sua sponte. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (per curiam) (affirming the district court's conclusion that it had the power to dismiss a frivolous action sua sponte); *Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim.") (quoting *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); Charles A. Wright & Arthur R. Miller, *5B Fed. Prac. & Proc. Civ*. § 1357 (3d ed.) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

Where, as here, a party appears pro se, a court must construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted); *see Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (confirming *Triestman*'s approach to pro se litigants).  However, "failure of subject matter jurisdiction is not

waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000); *see also Faucette v. Colvin*, No. 15 Civ. 8495, 2016 WL 866350, at *2 (S.D.N.Y. Mar. 3, 2016) (same).

## III.  DISCUSSION

### A.  Claims Against NTT Data

Because the proposed SAC would assert claims against NTT Data that could not survive a motion to dismiss, leave to amend as to NTT Data is futile and is denied.  The proposed complaint alleges three claims against NTT Data -- retaliation in violation of New York Labor Law, fraudulent misrepresentation and the SOX Claim.

The first two of these could not survive a motion to dismiss because the Court previously dismissed them from this action on September 28, 2015.  Plaintiff's FAC and proposed SAC both allege that NTT Data fraudulently misrepresented the terms of the Agreement to Plaintiff; and both allege the New York Labor Law retaliation claim.  These claims were dismissed from the FAC for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, which "directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (explaining the *Rooker-Feldman* doctrine).  The *Rooker-Feldman* doctrine is intended to foreclose a narrow and specific kind of case: "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

*Exxon Mobil*, 544 U.S. at 284; *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (same).  Because the state court rejected Plaintiff's objection to arbitration, and Plaintiff seeks relief in federal court as an alternative to that arbitration, Plaintiff's claims meet all four criteria of *Rooker-Feldman*: he lost in state court as he was compelled to arbitrate under the terms of the Agreement; he seeks relief here to avoid that arbitration; the state court judgment was entered before the commencement of the present federal court action; and Plaintiff's claims here necessarily invite the district court to reject the judgment of the state court.  *See Yonkers Elec. Contracting Corp. v. Local Union No. 3, Int'l Bhd. Elec. Workers' AFL-CIO*, 220 F. Supp. 2d 254, 259 (S.D.N.Y. 2002) ("A federal court does not have subject matter jurisdiction over a petition to compel arbitration after a state court has already ruled on the merits of that petition."); *Wanderlust Pictures, Inc. v. Empire Entm't Grp.*, No. 01 Civ. 4465, 2001 WL 826095, at *4 (S.D.N.Y. July 19, 2001) ("[S]everal courts have applied the Rooker-Feldman doctrine in cases where a state court has ruled on a party's right to arbitrate prior to the petitioner's filing of the federal suit.").  The state law claims against NTT Data were properly dismissed from the FAC and, if reasserted, could not survive a motion to dismiss, rendering leave to amend futile.

Plaintiff also seeks to amend his complaint to add the SOX Claim against NTT Data.  Although this claim is new -- albeit alleging essentially the same facts as Plaintiff's previously dismissed retaliation claim under New York Labor Law and the FLSA -- it is dismissed because this Court lacks jurisdiction to hear Plaintiff's claim.  An employee seeking relief under the Sarbanes-Oxley Act must first file a complaint with OSHA, the agency with delegated authority to receive such complaints.  29 C.F.R. § 1980.103(c) (2015); *see* 18 U.S.C. § 1514A(b)(1)(A) (2010).  Plaintiff filed his OSHA complaint after filing for leave to add the SOX claim in this action.  OSHA dismissed Plaintiff's complaint as untimely.  Plaintiff was permitted to object to

this determination and request a hearing with an Administrative Law Judge within thirty days of OSHA's determination, *see* 29 C.F.R. §§ 1980.105(c), 1980.107, which was dated February 11, 2016.  If Plaintiff failed to object, OSHA's dismissal is final.  *See id*. at § 1980.105(c).  If Plaintiff did object and the administrative law judge affirmed OSHA's findings, Plaintiff's sole recourse in the federal courts is an appeal to the United States Court of Appeals.  *See id*. at § 1980.112; *see generally* Procedures for the Handling of Retaliation Complaints Under Section 806 of the Sarbanes-Oxley Act of 2002, as amended, 80 Fed. Reg. 11865, 11866 (Mar. 5, 2015).  Plaintiff cannot seek relief in this Court, as OSHA acted within 180 days of Plaintiff's filing of the complaint.  Only if OSHA had "not issued a final decision within 180 days of the filing of the complaint," could the employee bring "an action at law or equity for *de novo* review in the appropriate district court of the United States." 29 C.F.R. § 1980.114 (2015).

Even if the Court had subject matter jurisdiction to review OSHA's determination, it is evident from the face of the proposed SAC that the SOX Claim is untimely.  The Sarbanes-Oxley Act, as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, obligates a complainant to file his complaint within 180 days of discovering the violation.  18 U.S.C. § 1514A(b)(2)(D) (2010).  The proposed claim alleges impermissible retaliation on April 27, 2012, in a complaint filed in October 2015.   Plaintiff did not file until more than 1,200 days had elapsed.  The proposed SAC is therefore untimely and would not survive a motion to dismiss.  Leave to amend would be futile.

Plaintiff's request dated April 6, 2016, to further amend his pleading to add a claim for violation of the civil provisions of the Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("civil RICO'"), is also denied as futile.  The proposed SAC does not allege, nor has Plaintiff otherwise suggested specific facts that, construed in the most generous

light, would give rise to an inference of a criminal predicate act necessary to bring a civil RICO claim.  *See* 18 U.S.C. § 1962 (establishing conduct constituting RICO predicate); 18 U.S.C. § 1964 (providing for civil remedies to RICO offenses).  Plaintiff makes only conclusory statements that he "can substantiate allegations that Ed Epstein and Sharin Newman of NTT Data, Inc. committed multiple acts of wire fraud at [his] expense."  Although Plaintiff raised the possibility of amending the FAC to add a civil RICO claim at the September 28, 2016, hearing, his decision not to do so in the proposed SAC does not entitle him to successive bites at the apple by rationing his proposed amendments over multiple iterations of the complaint.

>    **B.**     **Claims Against Credit Suisse**

Plaintiff alleges several claims against Credit Suisse.  Credit Suisse was not a signatory to the Agreement, and its arbitration clause does not cover disputes with Credit Suisse.  However, Plaintiff's services were provided to Credit Suisse pursuant to the Agreement, and Plaintiff cannot avoid the arbitration provision by pressing his claims against Credit Suisse rather than NTT Data, the counterparty to the Agreement.  "[A] signatory [is estopped] from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l*, 198 F.3d 88, 98 (2d Cir. 1999) (emphasis omitted).

Plaintiff's claims against Credit Suisse are intertwined with the Agreement as it gave rise to any relationship between Plaintiff and Credit Suisse.  The allegations of non-payment and retaliatory firing arise primarily from any rights Plaintiff may or may not have under the Agreement.  *See Holick v. Celluar Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) ("If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then

those claims must be arbitrated." (quoting *Smith/Enron*, 198 F.3d at 99)).  It would be anomalous and could lead to inconsistent results to require claims against NTT Data to be arbitrated and the related, if not identical, claims against Credit Suisse to be litigated.  Plaintiff is therefore estopped from litigating here claims that should be arbitrated.  Allowing Plaintiff leave to amend his complaint to add the proposed claims against Credit Suisse would be futile and is denied.

This estoppel precluding the litigation of claims against Credit Suisse in the proposed SAC applies equally to the existing claims against Credit Suisse in the operative FAC.  Both complaints are predicated on identical alleged facts and bear the same relationship to the Agreement.  Plaintiff's claims against Credit Suisse are dismissed sua sponte, leaving no further claims for the Court to adjudicate.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to amend the complaint is DENIED.  Plaintiff's First Amended Complaint is DISMISSED.  The Clerk of Court is respectfully directed to mail a copy of this Order and Opinion to the pro se Plaintiff and to close the case.

Dated: May 17, 2016
    New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**